IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDICAL ADVOCATES FOR HEALTHY AIR and SIERRA CLUB,<br><br>          Plaintiffs,<br><br>   v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,<br><br>          Defendants.<br>_____ / | No. CV 11-3515 SI<br><br>**ORDER DENYING AIR COALITION TEAM'S MOTION TO INTERVENE AS A DEFENDANT** |

The motion by Air Coalition Team ("ACT") to intervene as a defendant is scheduled for a hearing on October 14, 2011. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument, and VACATES the hearing. For the reasons set forth below, the Court DENIES ACT's motion to intervene.

**BACKGROUND**

On July 18, 2011, plaintiffs Medical Advocates for Healthy Air and Sierra Club filed this action against defendants Environmental Protection Agency ("EPA"), EPA Administrator Lisa P. Jackson, and EPA Regional Administrator Jared Blumenfield. Plaintiffs allege that the EPA is in violation of the Clean Air Act ("CAA"), 42 U.S.C. §§ 7509(c)(1) and 7511(b)(2)(A), because it failed to determine by May 15, 2011 whether the San Joaquin Valley ("Valley") had attained the federal standard limiting the maximum 1-hour concentration of ozone ("1-hour standard"). Compl. ¶¶ 41-47. Plaintiffs further allege that the EPA is in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 555(b), because it unreasonably delayed in responding to plaintiffs' petition to the EPA requesting that it take action to

determine whether the Valley had attained the 1-hour standard. Compl. ¶¶ 48-53. The complaint requests declaratory and injunctive relief in the form of a declaration that the EPA is in violation of the CAA and the APA, and an order directing the EPA to determine if the Valley has attained the 1-hour standard and to respond to plaintiffs' petition. Compl., Prayer for Relief ¶¶ 1-3. The complaint also requests that the Court retain jurisdiction over this matter "until such time as EPA has complied with its non-discretionary duties under the Clean Air Act and the Administrative Procedure Act." *Id*. ¶ 4.

The San Joaquin Valley Unified Air Pollution Control District (the "District") has moved to intervene as a defendant. Docket 12. The District's mandate is to "adopt and enforce plans, rules and regulations to achieve and maintain both the federal and state ambient air quality standards" in the Valley. District's Mot. to Intervene at 3. Neither plaintiffs nor the EPA opposes the District's motion. Dockets 17, 19.[1]

ACT has also moved to intervene as a defendant as a matter of right pursuant to Federal Rule of Civil Procedure 24(a), or alternatively, with permission of the Court pursuant to Rule 24(b). ACT is an unincorporated coalition "comprised of members and representatives from the California Cotton Ginners and Growers Associations, the County Farm Bureaus for King, Fresno, Madera, Tulare and Kern Counties, California Citrus Mutual, Western Plan Health Association, and other similarly situated, interested parties and entities." ACT's Mot. to Intervene at 6. ACT claims that its members "engage in daily operations that produce nitrogen oxides through fuel combustion and industrial processes, as well as use commercial pesticides formulations that release volatile organic compounds into the air." *Id.* at 6-7. Ozone is formed by the chemical reaction between nitrogen oxides and volatile organic compounds in the presence of sunlight. Compl. ¶ 26; ACT's Mot. to Intervene at 7. ACT asserts that because the business operations of its members contribute to the production of ozone, ACT has an interest in the consequences the flow from a finding of nonattainment in the Valley: EPA regulations that "will adversely impact the way ACT and its members conduct their business operations." ACT's Mot. to Intervene at 8. Plaintiffs oppose ACT's motion for intervention, contending that ACT's alleged interests do not directly relate to the merits of this case, and any impact to these interests is based on

---

[1] The Court will grant the Air District's unopposed motion in a separate order.

2

assumption and speculation. EPA does not oppose ACT's motion. Docket 18.

**LEGAL STANDARDS**

**I.      Intervention by Right**

Rule 24(a)(2) permits intervention by right if the intervening party can "claim an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. Pro. 24(a)(2). The Ninth Circuit has further provided a four-part test for analyzing Rule 24(a)(2) motions to intervene: (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action. *Wilderness Soc'y et al. v. United States Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc) (citing *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993) (abrogated on other grounds by *Wilderness Soc'y.*, 630 F.3d 1173). Proposed intervenors must satisfy all four criteria; "[f]ailure to satisfy any one of the requirements is fatal to the application." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947 (9th Cir. 2009) (citations omitted).

**II.     Permissive Intervention**

Even if a party does not qualify for intervention of right, a court may permit that party's "timely application" for intervention "[w]hen an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b)(2). In deciding whether a party should be permitted to intervene a court may consider the following factors, among others: the nature and extent of the intervenors' interest; their standing to raise relevant legal issues; the legal position they seek to advance, and its probable relation to the merits of the case; whether the intervenors' interests are adequately represented by other parties; and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable

adjudication of the legal questions presented. *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977). Permissive intervention "is committed to the broad discretion of the district court." *Orange County v. Air Cal.*, 799 F.2d 535, 539 (9th Cir. 1986).

**DISCUSSION**

**I.    Intervention by Right**

Motions for intervention as of right are evaluated in accordance with the four-part *Wilderness Society* test. Plaintiffs do not contend that ACT's motion is untimely, and therefore the Court does not address the first factor of the test. Under the second and third prongs of the test, the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action, and the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest. *Wilderness Soc'y*, 630 F.3d at 1177. ACT contends that it has a proprietary interest in the litigation because "if chemical use or industrial process is banned, ACT and its members will lose their ability to effectively produce commodities of choice and will be forced out of the market." ACT's Mot. to Intervene at 11. ACT argues that the disposition of the action may impair its ability to protect its interests because the relief requested by plaintiffs "will affect ACT and its members' interests, including their right to farm, crop choice, industrial process and land use issues" and "the result of a nonattainment determination changes the playing field and rules for ACT and its members." *Id.* at 12.

Plaintiffs argue that ACT has no interest directly related to the merits of this case, and that "ACT's alleged interests are speculative and several steps removed from the outcome of this case." Pls.' Opp'n at 2. Plaintiffs note that even if they prevail, the only relief that plaintiffs could obtain is an order directing the EPA to make a determination as to whether the Valley has attained the 1-hour standard. Plaintiffs assert that even assuming that the EPA determined that the Valley had failed to meet the standard, the effect on ACT's interests is still speculative because at that point the District might or might not adopt regulations affecting ACT's members.

A prospective intervenor has a significant protectable interest if (1) the interest is protected under some law; and (2) there is a relationship between the legally protected interest and the claims at issue.

4

*Wilderness Soc'y.*, 630 F.3d at 1176. A prospective intervenor's "significant and protectable interest" is impaired if the relief sought "would necessarily result in practical impairment" of its interest. *Id.* at 1179.

In *Sierra Club v. EPA*, 995 F.2d at 1482, the Ninth Circuit held that the City of Phoenix had a significant protectable interest because the suit sought to compel the EPA to change the terms of permits issued under the Clean Water Act, and the City owned the permits at issue as well as the treatment plants covered by the permits. The court held that the City's interests would be impaired if it was not allowed to intervene because "the lawsuit would affect the use of real property owned by the intervenor by requiring the defendant to change the terms of permits it issues to the would-be intervenor." *Id.* at 1483. Similarly, in *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001), the Ninth Circuit held that a construction company had a significant protectable interest in a suit alleging that a city's land management plan did not comply with the Endangered Species Act because the company was a beneficiary to approved building projects, and the relief sought by the plaintiffs would have revoked the plan to complete these projects. *Id*. at 820-22.

In contrast, a prospective intervenor does not have a significant protectable interest if there is no relationship between a legally protected interest and the claims at issue, such that the resolution of the plaintiff's claims will not actually affect the prospective intervenor. In *Donnelly v. Glickman*, 159 F.3d 405 (9th Cir. 1998), a group of male employees sought to intervene in a class action brought by female employees who alleged that their employer subjected them to a hostile work environment. With regard to intervention in the liability phase, the court found there was no significant protectable interest because "Plaintiffs' action focuses exclusively on whether the Forest Service . . . subjected female employees to a hostile work environment. Resolution of plaintiffs' action, therefore, will not affect the proposed intervenors' claims that the Forest Service subjected *male* employees to discriminatory treatment." *Id*. at 410 (emphasis in original). The male employees also argued that the remedies would affect their interests, because they "could go beyond ending harassment of female employees to create discrimination against male employees." *Id.* at 411. The Ninth Circuit rejected that argument, finding "[t]hat possibility is not inherent in any of the requested remedies. When an applicant's purported interest is so tenuous, intervention is inappropriate." *Id.*; *see also Benny v. England*, 791 F.2d 712, 721

5

(9th Cir. 1986) ("This possibility that our decision could affect [the applicants'] interests is too tenuous to entitle them to intervene [as] of right.").

The Court agrees with plaintiffs that ACT has not demonstrated that it has a significant and protectable interest "relating to the property or transaction which is the subject of the action," or that "the disposition of the action may as a practical matter impair or impede its ability to protect that interest." *Wilderness Soc'y*, 630 F.3d at 1179. ACT claims that its members enjoy the right to farm, to choose their crops and industrial processes, and to decide how to use their land, and that these interests are protected by law. ACT's Mot. to Intervene at 12. While that may be true, there is still no "relationship between the legally protected interest and the claims at issue." *Sierra Club*, 995 F.2d at 1484. Unlike in *Sierra Club* or *Berg*, the determination of plaintiffs' claims, even if they are successful, will not directly affect the use of property owned by ACT's members. In the event plaintiffs prevail in this case, the Court would declare the EPA in violation of the Clean Air Act and the Administrative Procedure Act, and order it to comply with those statutes. Such relief will not practically impair the prospective intervenors' rights to farm and engage in business operations. ACT speculates that a resolution in favor of plaintiffs, and a subsequent finding of nonattainment, will increase regulation unfavorable to ACT's members. However, "that possibility is not inherent in any of the requested remedies" and is too tenuous to grant intervention. *Donnelly*, 159 F.3d at 410.

ACT's reliance on this Court's recent decision in *Wild Equity Institute, et al. v. City of San Francisco, et al.*, No. C 11-00958 SI, 2011 WL 2532436 (N.D. Cal. June 24, 2011), is misplaced. In *Wild Equity*, the Court permitted a non-profit corporation promoting public golf courses to intervene as a defendant in an action where the injunction sought by plaintiffs, if obtained, will inhibit the intervenors' members' continued use of a public golf course. 2011 WL 2532436, at *2. Here, unlike in *Wild Equity*, the injunctive relief sought by plaintiffs will not inhibit the continued business operations of ACT's members. In the event that plaintiffs prevail in this case, the injunctive relief would require the EPA to comply with the law in the form of making a finding of attainment or nonattainment for the Valley, and responding to plaintiffs' petition to the EPA. A court order requiring the EPA to make a finding and respond to plaintiffs will not "necessarily result in practical impairment" of ACT's members' rights to farm and engage in business operations. *Sierra Club*, 995 F.2d at 1482.

6

This action is far more similar to the situation faced by Judge Armstrong of this District in *Medical Advocates for Healthy Air, et al. v. Johnson*, C 06-0093 SBA, 2006 WL 1530094 (filed Jun. 2, 2006), where this same party, ACT, sought to intervene in another Clear Air Act against the EPA. Judge Armstrong denied both intervention as of right and permissive intervention, finding that ACT did not have a "significantly protectable interest" to support its intervention in a Clean Air Act suit to compel EPA to comply with the deadline to prepare contingency measures because "the scope of this litigation is limited to the determination of an appropriate deadline by which EPA must promulgate an FIP [federal implementation plan] containing contingency measures."

Because the Court finds that ACT has failed to satisfy the second and third prongs of the *Wilderness Society* test for intervention by right, the Court will not address the fourth factor of inadequate representation.

## II.     Permissive Intervention

ACT alternatively contends that it should be allowed to intervene at the Court's discretion because "ACT's members all have property interests and involvement in the industries which [would] be directly impacted by any action in this litigation." ACT's Mot. to Intervene at 15. Plaintiffs dispute that ACT has made a showing of the factors required for permissive intervention.

Permissive intervention is appropriate when an applicant has shown that (1) there are independent grounds for jurisdiction; (2) the motion is timely; and (3) its claim or defense, and the main action, have a question of law or a question of fact in common. *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996). Even if the applicant satisfies these threshold requirements, however, the Court has the discretion to deny permissive intervention. *Donnelly*, 159 F.3d 412.

The Court agrees with plaintiffs that ACT has not made the necessary threshold showing for permissive intervention. Rather, ACT simply reiterates the same interests that it asserts in its argument for intervention by right. For the same reasons described above, the Court finds that ACT's interests are too attenuated from this case. Accordingly, the Court declines to grant permissive intervention.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES the motion to intervene of ACT in its entirety.  Docket 13.

**IT IS SO ORDERED.**

Dated: October 12, 2011

SUSAN ILLSTON
United States District Judge