IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDICAL ADVOCATES FOR HEALTHY AIR, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al*.,<br><br>Defendants,<br><br>SAN JOAQUIN VALLEY AIR POLLUTION CONTROL DISTRICT,<br><br>Defendant-Intervenor.<br>_____/ | No. C 11-3515 SI<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

On February 3, 2012, the Court held a hearing on plaintiffs' motion for summary judgment and defendants' motion to dismiss. For the reasons set forth below, the Court DENIES plaintiffs' motion for summary judgment and GRANTS defendants' motion to dismiss.

**BACKGROUND**

On July 18, 2011, plaintiffs Medical Advocates for Healthy Air and Sierra Club sued the Environmental Protection Agency ("EPA") for failure to meet the statutory deadline of May 15, 2011, for determining whether the San Joaquin Valley ("Valley") attained or failed to attain the National Ambient Air Quality Standard ("NAAQS" or "standard") for ozone. The Valley lies within the San Joaquin Unified Air Pollution Control District ("District").

The complaint seeks to compel EPA to make a determination of attainment or nonattainment of the one-hour ozone standard for the Valley under Sections 179(c) and 181(b)(2) of the Clean Air Act

("CAA" or "the Act"), 42 U.S.C. §§ 7401 *et seq.* The EPA ultimately issued a Final Determination of Non-Attainment ("FDNA") for the Valley in December, 2011. The nonattainment determination was based on Sections 301(a) and 181(b)(2) of the Clean Air Act.

In the current motions, plaintiffs seek summary judgment of declaratory and injunctive relief concerning EPA's nonattainment determination, and defendants seek dismissal based on mootness and lack of jurisdiction.

**1.     Statutory background**

The federal Clean Air Act establishes a comprehensive program for controlling and improving the nation's air quality through shared federal and state responsibility. The CAA authorizes EPA to establish standards – NAAQSs – that apply to air pollutants that are deleterious to the health of the public. 42 U.S.C. § 7409. In 1979, EPA promulgated a standard for ozone limiting the acceptable level of ozone in the ambient air to a maximum of 0.12 parts per million ("ppm") as measured by monitored levels averaged over one hour ("the one–hour ozone standard"). *Revisions to the National Ambient Air Quality Standards for Photochemical Oxidants*, 44 Fed. Reg. 8202 (Feb. 8, 1979).

EPA designates areas which fail to attain a NAAQS standard as "nonattainment areas." *Id*. §§ 7407(d)(1). Nonattainment areas are divided into five categories, based upon the severity of the pollution: "Marginal," "Moderate," "Serious," "Severe," and "Extreme." *Id*. § 7511. On November 6, 1991, EPA designated the Valley as a "Serious" nonattainment area for the one-hour ozone standard, and later reclassified it as "Severe," and then as "Extreme." *See Designation of Areas for Air Quality Planning Purposes*, 56 Fed. Reg. 56,694 (Nov. 6, 1991); *Clean Air Act Reclassification, San Joaquin Valley Nonattainment Area; Designation of East Kern County Nonattainment Area and Extension of Attainment Date; California; Ozone*, 66 Fed. Reg. 56,476 (Nov. 8, 2001); *Clean Air Act Reclassification, San Joaquin Valley Nonattainment Area; California; Ozone*, 69 Fed. Reg. 20,550 (Apr. 16, 2004). The control requirements and date for attainment of the one-hour ozone standard varied with an area's classification. "Severe" and "Extreme" areas were required to adopt certain measures to take effect if and when EPA determined that the area failed to attain the one-hour standard by the applicable attainment date. These measures include contingency measures under Section 172(c)(9) of the Act, 42

U.S.C. § 7502(c)(9) ("contingency measures"), and major stationary source fees under sections 182(d)(3) and 185 of the Act, 42 U.S.C. §§ 7511a(d)(3) & 7511d ("section 185 fees").

In 1997, EPA promulgated a new NAAQS standard for ozone, which replaced the one-hour ozone standard with a slightly less stringent eight-hour average concentration ("the eight-hour ozone standard"). The eight-hour ozone standard set the maximum to 0.08 ppm as measured by monitored levels over an eight-hour period. *National Ambient Air Quality Standards for Ozone*, 62 Fed. Reg. 38,856 (July 18, 1997). "Alongside its revised standard, EPA also announced an implementation 'guidance' indicating its intention to phase out the one-hour standard only after 'EPA determines that the area has air quality meeting the 1-hour standard,' [62 Fed. Reg. at 38,894] while implementing the eight-hour standard under the generic Subpart 1 of the Act, [62 Fed. Reg. at 38,873]." *South Coast Air Quality Mgmt. Dist. v. EPA*, 472 F.3d 882, 888 (D.C. Cir. 2006).

In a 2004 rulemaking governing implementation of the eight-hour standard, EPA "announced a new approach to ozone regulation." *Id.* at 889. "Reversing its 1997 position, EPA announced that the one-hour Standard would be withdrawn 'in full,' one year following the effective date of the eight-hour NAAQS designations." *Id.* (citing 69 Fed. Reg. 23,951, at 23,958 (Apr. 30, 2004)). In EPA's rules to address the transition from the one-hour standard to the less-stringent eight-hour standard, EPA did not include contingency measures or section 185 fees as measures retained as one-hour ozone "anti-backsliding" requirements. Section 172(e) of the Act provides that EPA may relax a NAAQS, but that in so doing, EPA must "provide for controls which are not less stringent than the controls applicable to areas designated nonattainment before such relaxation." 42 U.S.C. § 7502(e). "This provision protects against backsliding." *South Coast*, 472 F.3d at 888.

In *South Coast*, a number of parties challenged the 2004 Rule and related EPA decisions. The environmental and State petitioners contended, *inter alia*, that EPA "should have retained more of the one-hour control requirements to prevent backsliding, and the Environmental petitioners contend[ed] that EPA should not have revoked the one-hour standard at all." *Id.* at 891. The D.C. Circuit held that "EPA retains the authority to revoke the one-hour standard so long as adequate anti-backsliding provisions are introduced." *Id.* at 899. The D.C. Circuit rejected EPA's narrow interpretation of the word "controls" in Section 172(e), and held that section 185 fees, contingency plans, rate-of-progress

3

milestones, and motor vehicle emissions budgets are each "a 'control[]' and that withdrawing any of them from a [State Implementation Plan] would constitute impermissible backsliding." *Id*. at 900. The D.C. Circuit vacated "those portions of the 2004 Rule that allow backsliding with respect to the measures [addressed in the opinion]" and remanded to EPA. *Id*. at 905.

**2.     Factual background**

"Extreme" nonattainment areas for ozone standards, such as the Valley, had until November 15, 2010 to attain the NAAQS for ozone. 42 U.S.C. § 7511(a)(1). The Act provides that "[w]ithin 6 months following the applicable attainment date [here, within 6 months following November 15, 2010, or May 15, 2011], . . . the Administrator shall determine, based on the area's design value (as of the attainment date), whether the area attained the standard by that date." *Id.* § 7511(b)(2)(A).

In December 2011, EPA made a Final Determination of Non-Attainment ("FDNA") of the one-hour ozone standard for the Valley. *Approval and Promulgation of Air Quality Implementation Plans; California; Determinations of Failure to Attain the One-Hour Ozone Standard*, 76 Fed. Reg. 82,133 (Dec. 30, 2011). The FDNA states that it is made "pursuant to EPA's obligation and authority under section 301(a) and the relevant portion of section 181(b)(2) to ensure implementation of one-hour ozone anti-backsliding requirements," and it determines that the Valley has failed to attain the one-hour ozone standard. *Id*. at 82,145.

The FDNA followed a September 14, 2011 proposed nonattainment determination, and public comment period. Plaintiffs submitted numerous comments stating, in one way or another, that EPA was required to make its nonattainment determination pursuant to Section 179(c) and the entirety of Section 181(b)(2) because such a determination would trigger the requirement to prepare a new one-hour ozone plan. For example, Earthjustice Comment #1 states,

> Earthjustice states that it assumes that EPA's failure to cite the relevant sections of the CAA and fully explain the implications of a failure to attain is an oversight because it contends that the requirements in CAA sections 179(c) and 181(b)(2) plainly mandate EPA to determine whether a nonattainment area attained the standard by the applicable date.

*Id*. at 82,139. EPA's response to this comment states, *inter alia*,

> For a number of reasons, EPA does not agree that it is compelled to act under the

4

> authority of CAA sections 179(c) and 181(b)(2) when making determinations for the revoked one-hour ozone standard. CAA section 179 requires, in relevant part, that EPA determine, based on the area's air quality as of the attainment date, whether the area attained the standard by that date. CAA section 179(c) applies to all of the NAAQS whereas CAA section 181(b)(2), in relevant part, largely mirrors section 179(c) and applies specifically to the ozone standard.
>
> Both section 179(c) and 181(b)(2) refer to the "standard," which doubtless applies to the NAAQS, but which does not clearly apply to a revoked standard, such as the one-hour ozone standard, which was revoked after promulgation of the 1997 eight-hour ozone standard. See 40 CFR 50.9(b). . . .
>
> Moreover, not all CAA provisions that applied prior to revocation of the one-hour standard were preserved as anti-backsliding requirements. Only specified requirements were identified and retained as applicable requirements. While EPA's identification of these requirements was challenged in the *South Coast* litigation, the D.C. Circuit's decisions in that case disposed of those challenges and closed the door on the issue of what constitutes an anti-backsliding requirement. The provisions of the rule indicating that EPA would not be obligated to make determinations under section 179(c) for purposes of future planning or section 181(b)(2) for purposes of reclassifications were not challenged and stand as promulgated. Even more significantly, the consequences of determinations set forth in portions of those provisions -- reclassification and additional one-hour planning -- were not retained as anti-backsliding requirements. This aspect of the anti-backsliding regime was not challenged by litigants or addressed by the *South Coast* court. The court vacated only those portions of EPA's implementation rule that it addressed in its *South Coast* decision. In accordance with EPA's Phase 1 Ozone Implementation Rule, EPA is no longer obligated, after revocation of the one-hour ozone standard, to determine pursuant to section 179(c) or section 181(b)(2) of the CAA whether an area attained the one-hour ozone standard by that area's attainment date for the one-hour ozone standard. See 40 CFR 50.905(e)(2). While EPA remains obligated to ensure implementation of those one-hour ozone anti-backsliding measures that were retained as applicable requirements, EPA is not obligated to, and has elected not to apply section 179(c) to make determinations whether an area attained the one-hour ozone standard by the applicable attainment date. EPA is undertaking these determinations expressly and solely to give effect to the anti-backsliding requirements for contingency measures and section 185 fees that have been retained as applicable requirements and which are linked to such determinations, under our authority under CAA section 301(a) and the relevant portion of section 181(b)(2) consistent with the *South Coast* decision. The only anti-backsliding requirements related to attainment planning for the one-hour ozone standard are contained in EPA's regulation 40 CFR 51.905(a), which does not include any obligations for subsequent planning rounds under section 179(d). Section 179(d) prescribes consequences that were not retained for purposes of anti-backsliding after revocation of the one-hour ozone standard.

*Id*. at 82,139-82,140. Similarly, Earthjustice's Comment #8 states,

> By relying on CAA section 301(a), Earthjustice is concerned that EPA is attempting to invent new procedures for determining attainment in order to avoid the obligation under section 179(d) to prepare a new one-hour ozone plan. Waiving the planning obligations would, in Earthjustice's view, violate the statute.

*Id*. at 82,143. EPA stated in response,

> EPA is not waiving any planning requirements under section 179(d), because they are

5

not applicable as one-hour anti-backsliding requirements. In accordance with 40 CFR 50.905(e)(2), we are no longer obligated to make attainment determinations under section 179(c) and there is nothing in the *South Coast* case or in EPA's past statements to the contrary. In any event, there is no provision retaining further planning under section 179(d) with respect to the revoked one-hour ozone standard.

*Id*.

On February 28, 2012, plaintiffs filed a petition for review in the Ninth Circuit Court of Appeals seeking judicial review of the FDNA. *Medical Advocates for Healthy Air and Sierra Club v. EPA*, (9th Cir. Case No. 12-70630).

**DISCUSSION**

Defendants contend that this case is moot because EPA has taken final agency action to determine that the Valley did not attain the one-hour ozone standard by the November 15, 2010 attainment date. Defendants argue that EPA has discharged the obligation that provided the sole basis for this mandatory duty lawsuit. Plaintiffs argue that this case is not moot because although EPA did make a nonattainment determination, it did not do so pursuant to Section 179.[1] Plaintiffs contend that EPA has a nondiscretionary duty to make a nonattainment determination pursuant to Section 179 because a finding pursuant to Section 179 would trigger anti-backsliding requirements in the form of additional planning. In response, defendants assert that plaintiffs' arguments about Section 179 challenge the substance of the EPA's FDNA, over which this Court lacks jurisdiction. EPA argues that EPA already considered plaintiffs' arguments about Section 179 during the rulemaking process, and that the Ninth Circuit will be adjudicating plaintiffs' substantive claims in the petition for review of EPA's final determination that plaintiffs recently filed in the Ninth Circuit.

The jurisdiction of federal courts depends on the existence of a "case or controversy" under Article III of the Constitution. *Pub. Utils. Comm'n v. Fed. Energy Regulatory Comm'n*, 100 F.3d 1451, 1458 (9th Cir. 1996). Article III § 2 of the Constitution requires the existence of a "case" or

---

[1] As stated *supra*, EPA made its nonattainment finding pursuant to Section 301(a) and "the relevant portion of section 181(b)(2)." The parties' briefing before this Court largely focuses on plaintiffs' claim that EPA is required to make a determination pursuant to Section 179, and thus while the parties appear to dispute whether EPA is also required to make a determination pursuant to all of section 181(b)(2), for ease of reference this order frames the dispute as one relating solely to Section 179.

6

1 "controversy" through all stages of federal judicial proceedings. This means that, throughout the
2 litigation, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the
3 defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Continental Bank Corp.*,
4 494 U.S. 472, 477 (1990). "[A] dispute solely about the meaning of a law, abstracted from any concrete
5 actual or threatened harm, falls outside the scope of the constitutional words 'Cases' and
6 'Controversies'." *Alvarez v. Smith*, 130 S. Ct. 576, 580-81 (2009) (citations omitted).

7 The CAA vests jurisdiction for claims challenging the substance of an EPA ruling with
8 nationwide impact in the Court of Appeals for the District of Columbia. 42 U.S.C.A. § 7607(b)(1). For
9 claims challenging the substance of an EPA ruling that "is locally or regionally applicable," the CAA
10 vests jurisdiction in the courts of appeal for the appropriate circuit. *Id.* For claims "against the
11 Administrator where there is alleged a failure of the Administrator to perform any act or duty under this
12 chapter which is not discretionary," the CAA provides for a citizen suit in the district courts. 42 U.S.C.
13 § 7604(a)(2).

14 The Court concludes that this case is moot because plaintiffs brought suit to compel EPA to
15 make a determination regarding whether the Valley has failed to attain the one-hour ozone standard, and
16 EPA has now issued a final rule and nonattainment decision. The Court further concludes that to the
17 extent plaintiffs argue that EPA was required to make its nonattainment determination pursuant to
18 Section 179, that challenge goes to the substance of EPA's final rule, and such a challenge is properly
19 brought in the Ninth Circuit.

20 In reaching these conclusions, the Court finds persuasive *Izaak Walton League of America v.*
21 *Johnson*, 400 F. Supp. 2d 38 (D.D.C. 2005). In *Izaak Walton*, the plaintiffs sought to compel EPA to
22 perform a mandatory duty under the CAA to promulgate emission standards for certain electric utility
23 steam generating units ("EUSGUs"). After the parties filed cross-motions for summary judgment, EPA
24 issued a final decision "delisting" the EUSGUs at issue, and EPA moved to dismiss the complaint as
25 moot. The court granted EPA's motion. The court first reviewed the statutory structure of the CAA,
26 noting that district courts had jurisdiction over citizen suits to compel EPA to perform nondiscretionary
27 acts or duties, and that courts of appeal have exclusive jurisdiction over review of final actions by EPA.
28 *Id.* at 41. The court then held that because EPA "has delisted EUSGUs from the source categories list

7

on March 15, 2005, the EPA's nondiscretionary duty to promulgate emission standards has ceased. Because the claim of a nondiscretionary duty is a condition predicate to this court's jurisdiction, and specifically to Plaintiff's claim for relief, Plaintiffs' cause of action has been extinguished before this court." *Id*.

The court noted that in opposing dismissal, the plaintiffs argued that the case was not moot because "Plaintiffs aver that the EPA impermissibly delisted EUSGUs by failing to follow the prescribed procedure for delisting source categories under 42 U.S.C. § 7412(d)(1)(c). . . . As such, according to Plaintiffs, the EPA's decision to delist EUSGUs lacks any force and effect. Therefore, under Plaintiffs' theory, EUSGUs have not been delisted and the EPA's nondiscretionary duty to promulgate standards remains intact rendering it appropriate for this court to exercise jurisdiction to order the EPA to perform its nondiscretionary duty." *Id*. at 42. The court rejected the plaintiffs' argument, holding that "[w]hile it may be true that the EPA did not properly delist EUSGUs as a source category, it does not follow that this court may review the EPA's actions in this regard." *Id*. The court found that under the plaintiffs' theory, "as a condition precedent to this court ordering the EPA to promulgate standards under 42 U.S.C. § 7412(c)(5), the Court would first have to determine that the delistment of EUSGUs was invalid. In other words, Plaintiffs are asking this court to declare invalid the EPA's action delisting EUSGUs." *Id*. The court held that it lacked the authority to do so.

> In sum, the decision to delist, and the manner at which the "regulation or order" was arrived, involves inquiry into the sufficiency and propriety of a regulation or order. Because nothing under 42 U.S.C. § 7607 allows this court to review regulations or orders, this court may not grant Plaintiffs their requested relief.

*Id*.

Here, similar to *Izaak Walton*, the relief that plaintiffs seek – a ruling that EPA has a nondiscretionary duty to make a nonattainment determination pursuant to Section 179 – would require this Court to inquire into the sufficiency and propriety of EPA's final nonattainment decision. In promulgating its final action, EPA explicitly found that it was not required to make a nonattainment decision pursuant to Section 179, and in the rulemaking process, EPA rejected the same arguments made by plaintiffs in the current motions regarding EPA's obligations under Section 179. As the *Izaak Walton* court noted,

8

> [T]he CAA directs that review of the efficacy of any such [final] action be in the courts of appeals. This rule not only encourages the expeditious resolution of cases by avoiding duplicative review, but it also ensures that multiple actions are not simultaneously pending before multiple courts, i.e., that plaintiffs here are not challenging the improper delistment while plaintiffs before the Court of Appeals are also challenging the EPA's decision to delist source categories, thereby saving the judiciary's and parties' time and resources.

*Id.* at 43-44.

For this Court to hold that EPA is required to make a nonattainment determination pursuant to Section 179, the Court would be required to invalidate that portion of EPA's final rule in which EPA held that it was not required to act pursuant to Section 179. The question of whether EPA is required to make a nonattainment finding pursuant to Section 179 is raised by plaintiffs' petition for review of EPA's final action, and will be decided by the Ninth Circuit. *Cf. Abramowitz v. EPA*, 832 F.2d 1071, 1076 (9th Cir. 1988) (rejecting EPA's argument that "only the control measures it expressly approved could be reviewed in a court of appeals, while its failure to act in other areas was subject to review in district court" because "when the challenge to agency action 'is embedded in a challenge to the validity of an implementation plan,' jurisdiction lies in the circuit court reviewing the plan," and stating that "[t]o hold otherwise would be to create a danger that two proceedings involving essentially the same agency action could occur simultaneously") *superseded by statute as stated in Hall v. EPA*, 263 F.3d 926 (9th Cir. 2001); *see also City of Seabrook v. Costle*, 659 F.2d 1371, 1373 (5th Cir. 1981) ("The suggestion that the district court can order the Administrator to do things he has failed to do in the SIP approval process while the court of appeals is reviewing what the Administrator has actually done would result in an impractical process of piecemeal review that Congress could not have intended in §§ 304 and 307").

///

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motion to dismiss and DENIES plaintiffs' motion for summary judgment. Docket Nos. 27, 32 & 35.

**IT IS SO ORDERED.**

Dated: March 5, 2012

SUSAN ILLSTON
United States District Judge